NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0387n.06

No. 22-5152

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 28, 2022
DEBORAH S. HUNT, Clerk

REBECCA LYNN PRUITT,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

OPINION

Before: BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

PER CURIAM. Rebecca Lynn Pruitt, a Kentucky plaintiff proceeding through counsel, appeals a magistrate judge's judgment affirming the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income. For the reasons set forth below, we **AFFIRM** the district court's judgment.

Pruitt worked as a deputy jailer for the Pike County Fiscal Court from 2005 to 2015. She quit that job due to the stress and anxiety she was experiencing from having to deal with inmates and unsupportive co-workers. As relevant to this appeal, on November 3, 2016, Pruitt protectively filed a claim for disability insurance benefits and supplemental security income based on mental impairments of depression and panic attacks. Pruitt alleged a disability onset date of August 1, 2014, but due to a prior adverse disability determination, her onset date was adjusted to October 1, 2016.

Pruitt's claim was denied initially and upon reconsideration. She requested and received an evidentiary hearing before an administrative law judge (ALJ), which took place in January

2019. Pruitt testified that she lived in a mobile home with her husband and 19-year-old daughter. She did not sleep very well and had nightmares. In the past, Pruitt's doctor had prescribed sleep aids, but she was no longer taking those at the time of the hearing. Pruitt was able to make a light breakfast for herself, but she spent most of the day sleeping or reading her Bible. She seldom watched television or listened to the radio. Pruitt had a dog and a fish, but her daughter took care of both pets. Pruitt drove a little bit, but she testified that she did not like to be in crowds, so she did not do much grocery shopping, and when she did, she liked to have someone else with her. Pruitt sat in the car in the parking lot during her daughter's high school events, such as dance recitals and basketball games. She very seldom visited other people, although she would go see her mother, who lived next door. Pruitt said that she had very low energy, had difficulty concentrating, and experienced feelings of guilt and worthlessness.

Pruitt saw Dr. Jay Narola, a psychiatrist, for psychotropic medication management from 2016 to 2018. Dr. Narola diagnosed Pruitt with treatment-resistant chronic depression. He also documented Pruitt as exhibiting hoarding behaviors. Dr. Narola's office notes reflect that Pruitt's mental illness took an undulating course—on some days her affect was constricted or preoccupied and depressed, on other days it was happier and relaxed. Similarly, Pruitt's insight and judgment ranged from limited to adequate to fair. Dr. Narola's final treatment note reported that Pruitt's affect was happier, her insight and judgment were fair, and she was making significant progress.

Dr. Narola completed a medical assessment of Pruitt's ability to perform work-related functions, in which he found that she had "marked" limitations in following work rules; dealing with stress; functioning independently; maintaining attention and concentration; behaving in an emotionally stable manner; demonstrating reliability; and understanding, remembering, and carrying out detailed ("but not complex") job instructions. Further, Dr. Narola indicated that Pruitt

had an "extreme" limitation in understanding, remembering, and carrying out complex job instructions. Pruitt was only slightly or moderately limited in dealing with the public; using judgment; interacting with supervisors; maintaining personal appearance; relating predictably in social situations; and understanding, remembering, and carrying out simple job instructions. In support of those findings, Dr. Narola wrote, "Patient used to work in jail which was very overwhelming and depressing to her. Now patient has improved but not significantly to take any stress of gainful employment. She is at risk of psychiatric decompensation with any stressor. She still needs to continue active psychiatric treatment management." A.R. 508. Dr. Narola diagnosed Pruitt with major depressive disorder, moderate chronic panic disorder without agoraphobia, and obsessive-compulsive behavior. He rated her global assessment of functioning (GAF) at 45 to 50, which indicates that the patient has serious symptoms or is seriously impaired in social, occupational, or school functioning.

During the evidentiary hearing, a vocational expert (VE) testified that a hypothetical person of Pruitt's age, education, and work history, and who had the ability to understand and perform simple and detailed job instructions for two-hour periods and could maintain regular attendance; could perform such jobs as bench assembly; packaging and sorting; and weighing, measuring, and inspecting. Further, the VE testified that these jobs exist in significant numbers in the national economy. But, the VE testified, if the hypothetical person had the marked limitations in functioning as indicated in Dr. Narola's report, then all work would be precluded.

The ALJ denied Pruitt's claim. Proceeding through the five-step disability determination sequence, *see* 20 C.F.R. § 404.1520, the ALJ first found that Pruitt had not engaged in any gainful activity since the alleged onset date of disability.

At the second and third steps, the ALJ found that Pruitt had the severe mental impairments of depressive disorder and anxiety, but that these impairments did not meet or equal a listed impairment, whether considered individually or in combination.

At the fourth step, the ALJ found that Pruitt had the mental residual functional capacity (RFC) to understand and perform simple and detailed instructions, sustain attention to perform simple tasks in two-hour segments, maintain regular attendance, interact with supervisors and co-workers, have occasional interaction with the public, accept instructions and respond appropriately to feedback from supervisors, work in proximity to others without becoming unduly distracted, and respond appropriately to occasional routine changes in the work setting.

In developing Pruitt's RFC, the ALJ found that her testimony about the limitations imposed by her mental impairments was inconsistent with the medical evidence and other evidence in the record. In support of that finding, the ALJ cited treatment notes that reported that in 2017 Pruitt had worked diligently in cleaning out multiple bags of items from her home, which to the ALJ indicated that she was able to perform an activity that requires concentration. Additionally, the ALJ cited records from 2018 that reported that Pruitt was busy running errands for others, visiting family members, and attending her daughter's high school graduation. The ALJ found that these activities "suggest[ed] that the claimant lives an active lifestyle and that her impairments are not as severe as alleged." A.R. 21. Further, the ALJ found that although Pruitt's records indicated that she experienced "some mental health symptoms," they "did not show evidence of chronic problems that would preclude the claimant from performing work as set forth in the [RFC]." A.R. 22. In support of that finding, the ALJ cited Pruitt's treatment notes, in which she reported feeling much better, denied suicidal and homicidal ideation, and was making significant progress under her prescribed medication regimen.

Additionally, the ALJ gave only "partial weight" to Dr. Narola's opinion of disability. A.R. 23. The ALJ found that the record supported Dr. Narola's opinion that Pruitt has moderate limitations in functioning, but not his opinion that she has marked and severe limitations in functioning. In support of that conclusion, the ALJ again cited Pruitt's treatment notes, which indicated progress during her therapy sessions and the lack of need for more "invasive" treatment, such as hospitalization. The ALJ also found that Dr. Narola failed to provide any rationale for his conclusions regarding Pruitt's functional limitations. The ALJ thus concluded that the aspects of Dr. Narola's opinion that indicated disability had no probative value because they were not supported by objective evidence.

At the fifth and final step, the ALJ found that this RFC would permit Pruitt to perform the assembling, packing and sorting, and inspecting jobs identified by the VE. And because these jobs existed in significant numbers in the national economy, the ALJ concluded that Pruitt was not disabled under the Social Security regulations. The ALJ therefore denied Pruitt's claim for supplemental security income and disability insurance benefits.

The Appeals Council denied Pruitt's request to review the ALJ's decision, making that decision the final decision of the Commissioner. Pruitt, proceeding through counsel, filed a timely complaint for judicial review of the ALJ's decision in district court, *see* 42 U.S.C. § 405(g), arguing that the ALJ misapplied the "treating physician rule" in discounting Dr. Narola's opinion and erred in finding that she was not credible about the limitations imposed by her mental impairments.

The parties consented to the jurisdiction of a magistrate judge, who found that the ALJ's decision was supported by substantial evidence. Although the magistrate judge agreed with Pruitt that the ALJ failed to cite any substantial evidence of record that was inconsistent with Dr. Narola's

opinion, she found that Dr. Narola's failure to explain the reasons for his conclusions and to support his opinion with citations to objective evidence provided "good reasons" for not giving his opinion controlling weight. Further, the magistrate judge concluded that although the ALJ had erred in not addressing the relevant regulatory factors in deciding to give Dr. Narola's opinion only partial weight, *see* 20 C.F.R. § 404.1527(c), that error was harmless because the ALJ's decision was clearly driven by his determination that Dr. Narola's opinion was conclusory and unsupported. Finally, the magistrate judge found that the ALJ did not err in discounting Pruitt's credibility because the ALJ cited substantial evidence showing that she performed activities that were inconsistent with her claimed mental limitations. The magistrate judge therefore affirmed the Commissioner's decision.

Pruitt raises the same two assignments of error in her timely appeal.

### A.  Standard of Review

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (internal quotation marks omitted). We review de novo the district court's conclusions on each issue. *Id.*

### B.  Analysis

#### 1.  Treating Physician Rule

Pruitt filed her claim for Social Security benefits before the regulations were amended in March 2017 to eliminate the "treating physician rule." *See* 20 C.F.R. § 404.1520c (2017). Under the treating physician rule, the opinion of a claimant's treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)) (cleaned up). But "[i]f the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence[.]" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). There is a rebuttable presumption "that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

Additionally, the ALJ must provide "good reasons" for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). We enforce this rule to ensure that claimants understand the disposition of their cases, to ensure that the ALJ applied the treating physician rule, and to permit meaningful review of the ALJ's application of the rule. *Id.* at 242-43. An ALJ's failure to comply with this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* at 243. Furthermore, "an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the

treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020). The ALJ's failure to comply with the good-reasons rule may be a harmless error, however, if "'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it' or where the Commissioner made 'findings consistent with the [treating-source] opinion' or where the purposes of notice and ability for meaningful review have been satisfied." *Id.* at 554 (quoting *Wilson*, 378 F.3d at 547) (alteration in original).

Here, we conclude that the ALJ made two procedural errors in giving only partial weight to Dr. Narola's opinion. First, the ALJ failed to analyze and discuss the relevant regulatory factors that supported his decision to give Dr. Narola's opinion non-controlling weight. Second, the ALJ summarily dismissed Dr. Narola's opinion as being unsupported by objective evidence and inconsistent with the record without identifying and discussing the substantial evidence that was inconsistent with the opinion. The ALJ thus failed to comply with the good-reasons rule. *See id.* Consequently, unless we conclude that this error was harmless, the ALJ's decision to give only partial weight to Dr. Narola's opinion was not supported by substantial evidence.

Dr. Narola expressed his opinions concerning Pruitt's functional limitations in a check-box form, and as described above, he provided a brief narrative stating that she cannot stand the stress of gainful employment, is prone to decompensate when stressed, and needs continued psychiatric treatment. Dr. Narola also gave Pruitt a GAF score that is indicative of serious impairments in social and occupational functioning. But Dr. Narola did not correlate his narrative with his conclusions that Pruitt has marked and extreme limitations in functioning. We have characterized an opinion expressed in a check-box form, without any further explanation to support the treating physician's conclusions, as "weak evidence" and have concluded that such an opinion meets the patently deficient standard. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th

Cir. 2016) (collecting cases). Moreover, Dr. Narola's narrative explanation essentially embraced the ultimate issue of whether Pruitt was disabled, which is a conclusion that is reserved for the Commissioner. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). The ALJ therefore was not required to give this narrative opinion any weight. *See id.* Finally, as the ALJ's order suggests, Dr. Narola's opinion is inconsistent with his treatment notes, in which he commented that Pruitt had demonstrated significant improvement in her mental status.

Consequently, we conclude that the ALJ's failure to comply with the good-reasons rule was a harmless error.

## 2. The ALJ's Adverse Credibility Determination

Pruitt also argues that the ALJ erred in discounting her subjective complaints about the limitations imposed by her mental impairments. She contends that her complaints were supported by substantial evidence in the record, including Dr. Narola's opinion. Pruitt argues that had the ALJ properly considered Dr. Narola's opinion, he would have found that she was fully credible.

An ALJ's credibility determinations are entitled to considerable deference. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002). Moreover, for purposes of our review, the issue is not whether there is evidence to support Pruitt's disability claim, but rather whether substantial evidence supports the ALJ's decision to discount her credibility. *See Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994).

As the ALJ found, treatment notes authored by Pruitt's treating therapist, Cheryl Combs-Walker, reflect that in order to overcome her hoarding behaviors, Pruitt worked diligently over the course of several weeks to de-clutter her house by collecting and disposing of numerous bags of unwanted or unneeded items. Additionally, Pruitt made plans to organize her house and took before-and-after pictures of various rooms of the house in order to demonstrate her progress to her

therapist. These activities support the ALJ's conclusion that Pruitt has the mental RFC to maintain the concentration and persistence needed to complete simple tasks. Moreover, although the ALJ arguably overstated the matter in concluding that the treatment notes reflect that Pruitt leads an "active lifestyle," they do show an overall improvement in her mental status and her abilities to socialize and to perform work-like activities, such as running errands. *Cf. Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997). We conclude therefore that substantial evidence supports the ALJ's credibility determination.

## Conclusion

We **AFFIRM** the district court's judgment.