**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0586n.06
Filed: September 30, 2008

**No. 08-5344**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DAVID COX, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: CLAY and GRIFFIN, Circuit Judges; and STAFFORD,[*] District Judge.

CLAY, Circuit Judge. Plaintiff-Appellant, David Cox, appeals from the district court's grant of summary judgment in favor of Defendant-Appellee, Commissioner of Social Security. Cox filed the instant action, pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner denying Cox's application for Social Security disability insurance benefits. Because we conclude that there is substantial evidence to support the Commissioner's decision,[1] we affirm the district court's grant of summary judgment in favor of the Commissioner.

_____

[*] The Honorable William H. Stafford, Jr., United States District Court for the Northern District of Florida, sitting by designation.

[1]Cox challenges only two aspects of the Commissioner's decision, as discussed below *infra* Part III. Accordingly, our review of the Commissioner's decision is limited to those discrete issues. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (limiting consideration to the "particular points" that appellant raised in her brief).

No. 08-5344
*Cox v. Comm'r of Soc. Sec.*


I


On April 8, 2003, Cox filed an application for disability benefits under Section 216(i) and Section 223 of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. The Social Security Administration ("SSA") denied Cox's initial application and subsequent request for reconsideration. Cox then requested a hearing, and appeared with counsel before an administrative law judge ("ALJ") on March 17, 2005.

At the time of the ALJ hearing, Cox was 57 years old, and previously had worked as a truck driver and heavy equipment operator. In his application for disability benefits, Cox claimed that he was unable to work due to back pain, eye problems, and high blood pressure. In his subsequent hearing before the ALJ, Cox further claimed to be incapable of working full-time as a result of depression and other psychological problems.

In support of his claim of disability, Cox submitted several medical reports and records documenting his history of back problems, as well as his own testimony about his symptoms. These reports show that, in 1988, Cox was diagnosed with a herniated disc, and underwent a lumbar laminectomy and discectomy. Following this successful procedure, Cox's back pain generally dissipated, but he continued to suffer some soreness and stiffness in his lower back. Cox testified that, over the years, this soreness worsened and, recently, transformed into severe pain that rendered him unable to work. Cox's medical reports and treatment notes, however, reveal only intermittent complaints of back pain during the years since his back surgery.

- 2 -

Cox's medical reports, many of which come from the Veterans Administration Medical Center ("VAMC") where he was treated, also describe Cox's other physical and mental problems. For instance, in 2002, Cox sought treatment at the VAMC for stress, anxiety, depression, and insomnia, and was placed on Trazodone. (R. at 376-90) In early 2003, Cox again went to the VAMC with complaints of double vision, abdominal pain, dizziness, and nausea. (R. at 330-53) At that time, Cox indicated that the Trazodone was helping with his depression, (R. at 337), and reported that he had not felt "down, depressed or hopeless" over the preceding month. (R. at 331) Cox's doctors also noted that he appeared cheerful, alert, oriented, pleasant and well groomed with intact memory and appropriate speech and behavior. (R. at 330)

On June 11 and 16, 2003, Dr. P. Saranga, M.D., a state agency medical consultant, reviewed Cox's medical records, and determined that Cox had no severe medical impairments and that Cox's minor medical impairments "have minimal effect on basic work activities and are considered not severe at this time." (R. at 392)

On August 7, 2003, Dr. Harwell F. Smith, III, Ph.D., performed a psychiatric consultative evaluation of Cox. At this evaluation, Cox complained of back pain and depression. (R. at 394) Cox indicated that the Trazodone was not helping with his sleeping problems or his depression. (R. at 396) Cox also explained that he lived alone, did his own cooking and cleaning, walked half a mile four times a day, and had a girlfriend whom he saw three times a week. Dr. Smith diagnosed Cox as having a pain disorder associated with a general medical condition and psychological factors, as

well as an "[a]djustment disorder with anxiety and depression." (R. at 397) Dr. Smith assigned Cox

a Global Assessment of Functioning (GAF) score of 55, which represents moderate limitations in

occupational functioning. (R. at 397; *see* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND

STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000) ("DSM IV"). In regard to Cox's

functional capacity Dr. Smith noted:

> David's [Cox's] ability to do his activities of daily living is good. His ability to relate
> socially to other people is good. His ability to remember two step instructions is
> good. His ability to show concentration and persistence on tasks is fair. His ability
> to tolerate the stresses and pressures of a day to day work setting is fair in
> circumstances where a lot of physical demands are not being laid on him. David *may
> be too depressed currently to work a full eight hours a day*. It appears that his
> depression is unrecognized and untreated, and probably, with appropriate medical
> intervention, David's depression would no longer be handicapping. David's ability
> to tolerate the stresses and pressures of a full time job doing what he has done in the
> past is poor.

(R. at 397-98 (emphasis added))

Shortly after Dr. Smith's evaluation, on August 19, 2003, Dr. Jay Athy, Ph.D., a state agency

psychological consultant, completed a mental residual functional capacity assessment of Cox based

on his review of Dr. Smith's report and Cox's medical records from the VAMC. Dr. Athy found that

Cox was not significantly limited in eighteen out of twenty areas of functional ability. (R. at 399-

400) Dr. Athy also found that Cox was only moderately limited in his ability to complete a normal

work-day and work-week without interruptions from psychologically based symptoms, to perform

at a consistent pace without an unreasonable number and length of rest periods, and to respond

appropriately to changes in the work setting. (R. at 400) Although generally affording Dr. Smith's report "great weight," Dr. Athy nevertheless only partially adopted Dr. Smith's concluding remarks about Cox's functional capacity because they "reflected a greater severity than the clinical evidence supports" and because Dr. Smith's discussion co-mingled physical and mental impairments. (R. at 401) Dr. Athy concluded that "[t]here [was] no compelling evidence that indicates marked functional limitations due to mental ability . . . [Cox] retains the mental capacity to perform simple, repetitive tasks in a simple, routine setting." (R. at 401)

On December 4, 2003, Dr. James Ross, M.D., another state agency medical consultant, completed a physical residual capacity assessment for Cox based on a request for reconsideration with no new medical examination. (R. at 418-19) Dr. Ross concluded that Cox's complaints regarding his back pain were only "partially credible" because "[t]he objective evidence does not support [Cox's] allegations." (R. at 418) Specifically, Dr. Ross concluded that Cox's "[c]hest x-ray, MRI, and CT scan of the head were all normal." (R. at 418) Ultimately, Dr. Ross confirmed the initial assessment that Cox's impairments were not severe.

From September 2003 through March 2004, Cox sought treatment at the VMAC on various occasions, complaining of chest pain, increased blood pressure, knee pain, and back pain. On each occasion, Cox indicated that he had not suffered depression during the previous month and appeared to be responding well to medication for his physical ailments.

In December of 2004, Cox was hospitalized for a staph infection and superficial venous thrombophlebitis of the left arm. At that time, Cox indicated that he was not depressed, and did not have difficulty sleeping, walking, or performing everyday activities. The doctors found Cox to be pleasant and conversant, with no muscle or joint swelling, or tenderness. A psychological evaluation of Cox indicated that he was calm and dealing with his hospitalization and illness appropriately.

On January 14, 2005, Dr. James A. Flueck, M.D., one of Cox's treating physicians at the VAMC, evaluated each of Cox's medical problems based on a review of Cox's medical records. (R. at 653-59) With respect to Cox's back injury, Dr. Flueck found that, while "[s]urgery definitely helped," Cox still had daily lower back pain with an intensity of "1 to 5 out of ten." (R. at 654) Dr. Flueck noted, however, that, since the onset of treatment, Cox's condition had improved, and that Cox's response to treatment was fair with no noticeable side effects from the medication. (R. at 654-55) Dr. Flueck also indicated that Cox had responded well to treatment for his anxiety, and that Cox had not had a panic attack in years. (R. at 655) Finally, Dr. Flueck noted that Cox's psychiatric examinations had revealed a normal affect, mood, judgment, behavior, and comprehension of commands. (R. at 668)

On January 21, 2005, Cox visited the VAMC for a follow-up examination. At that time, he indicated that he was not depressed and, with respect to his physical activities, had been able to resume walking daily and had just walked one mile the previous day. (R. at 647) The doctors found Cox to have a full range of motion and a normal gait. (R. at 649) Moreover, they noted that Cox

was alert, oriented, well-groomed, and with intact memory. (R. at 649) Cox's anxiety, depression, and insomnia appeared to be stable on Trazodone. (R. at 647)

On February 18, 2005, after reviewing Cox's records further, Dr. Flueck provided a summary of the effects of Cox's problems on his occupational and daily activities. In this report, Dr. Flueck concluded that Cox's degenerative disc disease and his anxiety disorder had no significant occupational effects. (R. at 670) In particular, Dr. Flueck found no effects on shopping, feeding, bathing, dressing, toileting, and grooming; mild effects on chores and traveling; moderate effects on exercise and recreation; and severe effects on sports. (R. at 670) Dr. Flueck also noted that Cox did not report being depressed during the preceding month. (R. at 674-75)

On April 28, 2005, the ALJ issued his decision, applying the five-step analysis set forth in 20 C.F.R. § 404.1520(a)(4) to conclude that Cox was not disabled at any time through the date of the hearing. On May 16, 2007, the Appeals Council denied Cox's request for review, thus making the ALJ's decision the final agency determination. 20 C.F.R. § 404.981.

Shortly thereafter, on June 6, 2007, Cox filed the instant action in the United States District Court for the Eastern District of Kentucky. On January 30, 2008, the district court, after receiving briefing from the parties, granted summary judgment in favor of the Commissioner and dismissed the case. *See Cox v. Astrue*, No. 07-168-JMH, 2008 WL 269062, at *4 (E.D. Ky. Jan. 30, 2008). This timely appeal followed.

II

This Court reviews the district court's grant of summary judgment *de novo*, and thus must consider the Commissioner's denial of disability benefits directly. *See Walker v. Secretary of HHS*, 980 F.2d 1066, 1069 (6th Cir. 1992). Judicial review of the Commissioner's decision is limited to an inquiry into whether the ALJ's findings are supported by "substantial evidence" in the record, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987) (internal quotations omitted); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In applying this standard, the Court does not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 489 F.3d 506, 509 (6th Cir. 2007). Indeed, under this deferential standard, "it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record." *Rogers*, 486 F.3d at 241.

III

To be considered disabled under the Social Security Act, a person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act

further specifies:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). To determine eligibility for disability benefits, the SSA uses a five-step

"sequential evaluation process." 20 C.F.R. § 404.1520. This Court has summarized this process as

follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. Claimants with impairments of insufficient duration are not disabled. Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [his or her] limitations." Claimants whose residual functional capacity permits them to perform

their "past relevant work" are not disabled. "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. Claimants who can perform such work are not disabled. The SSA bears the burden of proof at step five.

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006) (en banc) (internal citations omitted).

In the instant case, the ALJ applied this five-step framework to Cox's disability claim. The ALJ resolved the first step in Cox's favor, concluding that Cox had not engaged in substantial gainful activity at any time relevant to the ALJ's inquiry. Next, the ALJ determined that Cox is suffering from "severe impairments due to his anxiety disorder, depressive disorder, and somatoform disorder." (R. at 21) Based upon the medical evidence presented, however, the ALJ concluded that Cox's "back-pain is a non-severe impairment." (R. at 22) Proceeding to the third step of the analysis, the ALJ concluded that "a review of [Cox's] impairments in combination, including those deemed non-severe, reveals that they do not equal in severity any listed impairments" in the SSA regulations. (R. at 25) The ALJ then examined the medical evidence and found that:

[Cox] retains the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently. He has moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. He retains the mental capacity to perform simple repetitive tasks in a simple, routine setting.

(R. at 26-27) Finally, the ALJ determined that, while Cox's "impairments and attendant limitations have precluded performance of past relevant work as a truck driver and heavy equipment operator," he nevertheless is "capable of making a vocational adjustment to other work." (R. at 27) In particular, the ALJ found, based on testimony from a vocational expert, that Cox would be able to pursue a job as an assembler, a hand packer, a marker or labler, a production inspector, a bench worker, or a security monitor. (R. at 27) Accordingly, the ALJ concluded that Cox is not disabled within the meaning of the Act.

Cox now challenges the ALJ's conclusion on two grounds. First, Cox contends that the ALJ failed to give sufficient weight to his complaints of back pain. Second, Cox argues that the ALJ did not properly consider Dr. Smith's opinion that Cox may be too depressed to work a full eight-hour workday. After reviewing the record, we conclude that neither of these arguments has merit.

### 1. Cox's Complaints of Back Pain

Cox first argues that the ALJ gave "no weight" to his complaints of back pain and thus erred in determining that he could do work at a medium level of exertion. This argument, however, misconstrues the ALJ's decision. In his decision, the ALJ explicitly notes Cox's complaints of severe back pain, but concludes that the medical evidence does not support the degree of pain and the amount of limitations alleged by Cox. (R. at 22, 25-26) In particular, the ALJ notes several inconsistencies between Cox's claimed limitations and the evidence of his actual daily activities. (R. at 26) In short, while the ALJ did consider Cox's "subjective complaints (and allegedly related

functional limitations)," he found Cox's credibility regarding them "to be only fair at best." (R. at 26)

The ALJ's refusal to accept Cox's account of the severity of his pain on the basis of insufficient supporting evidence was not improper. Under the SSA regulations, a disability claimant's statements about his or her pain or other symptoms, standing alone, cannot establish that the claimant is disabled. 20 C.F.R. § 404.1529(a). Rather, "there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of [the] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." 20 C.F.R. § 404.1529(a).

In Cox's case, there was insufficient medical evidence to support his allegations that his back pain rendered him disabled. On the contrary, the medical evidence in the record indicates that Cox's 1988 back surgery helped relieve most of Cox's back pain, and that, since that surgery, Cox has made only infrequent complaints about back pain. Both Dr. Ross and Dr. Flueck, who were treating physicians at the VAMC, concluded that the medical evidence did not support Cox's allegations of severe back pain. (R. at 418, 654) Dr. Flueck also noted that Cox responded well to medication for his back pain. (R. at 654-55) Furthermore, the record reflects that, throughout the time period reviewed by the ALJ, Cox was able to walk at least a half of a mile per day, had a full range of

motion, and could perform all of his daily activities without interference from his back pain. (R. at 396, 619, 647) In light of this medical evidence, we conclude that the ALJ's decision to only partially credit Cox's complaints of debilitating back pain was supported by substantial evidence.

### 2. Limitations from Depression

Cox's second contention on appeal is that the ALJ failed to give proper weight to Dr. Smith's opinion regarding Cox's depression-related limitations. In particular, Cox points to Dr. Smith's opinion that Cox suffered from adjustment disorder with anxiety and depression, and that Cox's depression may prevent him from being able to work a full workday.

This argument, however, ignores the ALJ's reasons for rejecting that portion of Dr. Smith's opinion. In considering Dr. Smith's opinion about Cox's mental residual capacity, the ALJ stated:

> I am not unmindful of the opinion of the consultative examiner [Dr. Smith] that the claimant may be too depressed to work a full eight hours a day. I reject this conclusion for a number of reasons. First, I note that the examiner was not convinced that the claimant was being truthful during the examination. Second, this conclusion is inconsistent with the mental status examination. Furthermore, the conclusion is inconsistent with the treatment records elsewhere in the file. Given all of the above, I must reject the conclusion as unfounded.

(R. at 27) Each of these reasons is supported by evidence in the record. In his consultative evaluation of Cox, Dr. Smith noted that he was not convinced that Cox was being truthful with regard to some of the responses he gave. (R. at 397) Additionally, Dr. Smith's conclusions that Cox has a good ability to relate socially and to remember two step instructions and a fair ability to concentrate and persist on tasks and to tolerate the stresses and pressures of a work setting, (R. at

397-98), seem in tension with his later conjecture that Cox may be too depressed to work a full eight-hour day. Dr. Smith's conclusion about the extent of Cox's depression also is inconsistent with the medical reports from Cox's treating physicians which indicate that Cox exhibited no signs of depression and appeared to be responding well to medication for his anxiety disorder. (R. at 330, 337, 647) Finally, contrary to Cox's assertion that "[n]o other examiner made a determination or gave an opinion as to these facts," the record indicates that Dr. Athy, who had an opportunity to review Cox's VAMC records, questioned Dr. Smith's opinion. Specifically, Dr. Athy concluded that Dr. Smith's eight-hour workday conclusion "reflected a greater severity than the clinical evidence supports," and that there was "no compelling evidence that indicates marked functional limitations due to [Cox's] mental ability." (R. at 401)

The ALJ's decision to credit the opinion of Dr. Athy over that of Dr. Smith was not improper. Under the SSA regulations, the weight given a medical opinion depends upon the extent to which it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *accord Rogers*, 486 F.3d at 242. While a treating physician's opinion generally is afforded "substantial, if not controlling, deference," *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004), it still must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not [be] inconsistent with other substantial evidence in the case record." *Rogers*, 486 F.3d at 242 (internal quotations and alterations omitted). This Court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where,

as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record. *See*, *e.g.*, *Warner*, 375 F.3d at 391-92; *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372-73 (6th Cir. 2006) (unpublished); *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004) (unpublished). In the instant case, the ALJ found that Dr. Athy's opinion was more consistent with the other evidence in the record, and thus properly decided to give more weight to it than to Dr. Smith's opinion.

Moreover, even if the ALJ should have given Dr. Smith's opinion more weight on this point, Dr. Smith's opinion does not necessarily support Cox's claim that he is in fact disabled by his depression. Rather than demonstrating that Cox *is unable* to work, Dr. Smith's opinion merely opines that Cox "*may* be too depressed currently to work a full eight hours a day." (R. at 398 (emphasis added)) Indeed, Dr. Smith notes that "with appropriate medical intervention, [Cox's] depression would no longer be handicapping." (R. at 398) The record reflects that Cox was receiving such intervention in the form of his depression medication, Trazodone. (R. at 376, 337, 647) Thus, even Dr. Smith's opinion does not necessarily undermine the ALJ's ultimate conclusion that Cox is not disabled.

In light of the record before the ALJ, we conclude that there is more than ample evidence to support the ALJ's decision.

IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.