NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0238n.06

No. 09-5387

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>TIMOTHY G. COLLINS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td></td><td>)</td><td>STATES DISTRICT COURT FOR THE</td></tr>
<tr><td>MICHAEL J. ASTRUE</td><td>)</td><td>EASTERN DISTRICT OF KENTUCKY</td></tr>
<tr><td>Commissioner of Social Security,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Defendant-Appellee.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED
Apr 19, 2010
LEONARD GREEN, Clerk

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Timothy G. Collins appeals the district court's decision affirming the final decision of Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying him Social Security disability benefits. *Collins v. Astrue*, No. 08-cv-011-JBC, 2009 WL 211068 (E.D. Ky. Jan. 26, 2009). For the following reasons, we affirm the district court's grant of summary judgment to the Commissioner.

**I.**

At the onset of his disability on March 1, 2003, Collins was a forty-year-old male with less than a high school education who had worked in the past as a janitor. Collins initially filed a claim for disability insurance benefits on September 7, 2005. This claim was denied on February 9, 2006, and again upon reconsideration on June 12, 2006. A hearing was held on May 23, 2007, before Administrative Law Judge ("ALJ") Frank Letchworth. The ALJ issued his decision denying Collins

disability benefits on September 10, 2007, and found the facts as follows.

Collins had suffered a work-related knee injury, for which he required multiple surgeries, eventually resulting in a total knee replacement in November 2005. Records from Collins's treating physician, Dr. Christian Christensen, showed that by January 2006, Collins was "doing well" post-surgery, with only minimal antalgic gait. In April 2006, only minimal effusion in the knee was noted, and an x-ray showed no loosening and good alignment of the knee replacement. Dr. Christensen prescribed Collins painkillers and noted almost normal alignment as of his last appointment with Collins on July 12, 2006. Again, Dr. Christensen wrote that Collins was "doing well." In September 2006, Dr. Christensen's assistant, Brad Robertson, completed an assessment of Collins and found his physical abilities limited only by his inability to kneel or crawl on hard surfaces.

Collins began to see a local doctor, Jose Echeverria, in June 2006. Dr. Echeverria's June, July, and September 2006 examinations of Collins's knee showed some tenderness and mild swelling, but no effusion. On July 21, 2006, Dr. Echeverria noted that Collins's knee pain was "partially controlled" by medication with no signs of effusion or secondary infection. On November 1, 2006, Collins saw Dr. Echeverria, complaining of knee pain after falling at home three days prior. Dr. Echeverria noticed swelling and effusion and prescribed Collins painkillers. When he saw Collins again a few days later, Dr. Echeverria noticed no swelling and observed Collins to be "much improved." On November 14, 2006, Dr. Echeverria completed a medical assessment in which he found that Collins's ability to lift and carry objects was limited such that he could lift a maximum of ten pounds occasionally in an eight-hour day. He further found that Collins's ability to stand and

walk would be precluded and his ability to sit would be limited to two to four hours total, and one hour without interruption, in an eight-hour workday.

In addition to these physical examinations, Collins underwent several one-time examinations while pursuing his state worker's compensation and disability claims. The first of these examinations, performed by Dr. Kevin Croce on January 21, 2006, revealed that Collins favored his right leg, was unable to squat, had difficulty walking, and had limited range of motion in his injured knee. Dr. Croce felt that Collins had a mild impairment with standing and walking and that he would have difficulty with climbing, squatting, quick lateral movements, and repetitive use of his left knee. On February 10, 2007, during an examination by Dr. Daniel Stewart, Collins used a left knee brace and cane and a physical examination revealed his mild difficulty ascending and descending the examination table. Finally, Dr. Robert Hoskins examined Collins on March 15, 2007, at the request of Collins's attorney. Dr. Hoskins's examination showed bilateral knee crepitus, decreased range of motion of the injured knee, swelling, and a slow, limping gait.

In addition to his physical infirmities, Collins complained of depression and poor reading ability. The record showed that he had received treatment at the Cumberland River Comprehensive Care Center ("CRCCC") since 2006 for a mood disorder. As early as February 2006, his Global Assessment of Functioning was listed at 65. Collins reported that he had been taking psychotropic medications for his symptoms. During his last reported visit to CRCCC in September 2006, Collins reported decreased depression and improved sleep. The staff psychiatrist, Dr. Raza, noted that Collins was oriented and alert and that his mood was appropriate. Agency psychiatrist Dr. Jeanne Bennett consultatively examined Collins on April 23, 2006. Collins reported that he had repeated

third grade and required special education while attending school. During the examination, his attention and concentration were intact, and he smiled easily, maintained good eye contact, and demonstrated a wide range of affect. Dr. Bennett described his judgment as adequate. She further described his symptoms as a chronic pain disorder with psychological factors, a learning disorder, and a depressive disorder. Collins had no impairment in his capacity to "understand, remember, and carry out instructions toward the performance of simple repetitive task[s]" and had only "slight limitations" in his ability to "sustain attention and concentration towards the performance of simple repetitive task[s]."

Then, on May 16, 2006, agency psychiatrist Dr. Larry Freudenberger reviewed Dr. Bennett's report and found Collins to be suffering from certain mental disorders but only moderately limited in his ability to maintain attention and concentration for extended periods. Even so, Dr. Freudenberger concluded that Collins was able to "[u]nderstand, recall, and persist for simple tasks . . . [s]ocially function in [a] full time work setting . . . [and] [a]dapt to routine changes." Finally, Dr. Barbara Belew examined Collins at his attorney's request on or about May 12, 2007. She described him as being alert and oriented but noted impairment in his memory. Collins reported a history of substance abuse, with recent painkiller abuse in 2006.

At the hearing before the ALJ, Dr. James Miller testified as a vocational expert. The ALJ posed a series of hypothetical questions to Dr. Miller in order to assess what jobs Collins could perform. The first hypothetical involved the following restrictions:

> Dr. Miller, I want you to assume that the claimant is capable of performing a rang[e] of light exertion. The claimant can do no climbing of ladders, ropes or scaffolds. No crawling. No squatting. The claimant can occasionally stoop, occasionally bend, occasionally crouch. The claimant is limited to performing simple, one or two-step

instructions. . . . No kneeling. . . . The claimant can perform no job in which reading is an essential job element.

In response, Dr. Miller testified that an individual with such restrictions could not do Collins's past job as a janitor but would be able to perform jobs such as kitchen worker, material handler, small parts inspector or small parts assembler. The ALJ then added "a 30 minute sit/stand" restriction to those contained in the first hypothetical. Dr. Miller testified that with the addition of this "sit/stand option," Collins could still work as a small parts assembler or materials handler. The additional restriction reduced the number of such jobs available in Kentucky and the national economy. Finally, the ALJ added "an additional 30-minute rest period four times per week for knee icing" to the previous hypothetical scenarios. This restriction led Dr. Miller to state: "Well, that certainly would be an accommodation required of the employer and there's no guarantee that would happen. So if he needed that extra 30 minutes four times a week, then he might not be employable."

On cross-examination Collins's attorney asked Dr. Miller to assume additional restrictions related to Collins's mental health:

> Dr. Miller, if you kept the same physical restrictions that we've been talking about and added in additional psychological restrictions of not having any useful ability to relate to co-workers, deal with the public, interact with supervisors, understand and carry out complex job instructions, to behave in an emotionally stable manner, and to relate predictably in social situations. And being seriously limited, but not precluded in ability to use judgment, deal with work stress, function independently, maintain attention and concentration, understand, remember, and carry out detailed, but not complex instructions, and to demonstrate reliability. Would those psychological restrictions affect the jobs that you listed in those hypotheticals?

Dr. Miller testified that, in this scenario, Collins "would not be able to perform the jobs that I mentioned or any other kind of jobs."

On September 10, 2007, the ALJ issued a decision partially favorable to Collins, finding that

he was disabled from March 1, 2003 through July 12, 2006.[1] However, as of July 12, 2006, Collins had experienced significant medical improvement such that he was no longer disabled. Collins had the residual functional capacity to perform light work with certain conditions such as alternating between sitting and standing every 30 minutes. The ALJ found that although Collins experienced some residual limitations due to his total knee replacement, he was not totally disabled by his impairment since June 12, 2006. Specifically, the ALJ relied on Dr. Christensen's assessment of Collins as "doing well"and exhibiting normal gait, improved range of motion, and near normal alignment of his knee by July and September 2006. He discounted Dr. Echeverria's opinions because they were "rendered only a few days after the claimant presented for treatment with antalgic gait and walking with a cane because he had fallen at home a few days prior." Moreover, the ALJ believed that Dr. Echeverria's assessment of Collins's inability to stand or walk for any length of time during an eight-hour day to be unreliable since Collins had walked to two separate administrative hearings. Finally, Dr. Echeverria's latest examination of Collins revealed only mild swelling and tenderness in the knee. The ALJ analyzed Dr. Hoskins's opinions similarly.

The ALJ also ruled that Collins's mental impairments did not render him disabled. He found

---

[1]In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimants impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Social Security Administration's Listing of Impairments; at Step 4, the ALJ determines whether the claimant is able to perform past relevant work; and finally, at Step 5, where the burden of proof shifts to the Commissioner after a finding that the claimant is unable to perform past work, the ALJ determines whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citations omitted).

that although Collins suffered from certain impairments from March 1, 2003 through July 12, 2006, the record showed that his depression had improved by July 12, 2006, and that he was no more than mildly limited. The ALJ gave little weight to Dr. Belew's assessment of Collins because it was contradicted by Dr. Bennett's examination findings, the treatment evidence, and Collins's self-reported activities. Ultimately, the ALJ took into account Collins's limited reading ability and poor education and found him able to perform 1-2 step instructions in the residual functional capacity analysis.

Taking these factors into consideration, the ALJ concluded that based on Collins's age, education, work experience, and current residual functional capacity, a significant number of jobs existed in the national economy that he was capable of performing and he was not disabled after July 12, 2006. After an unsuccessful administrative appeal, Collins filed suit in federal district court, arguing that the ALJ erred in relying on the 2006 report by Dr. Christensen and the ALJ improperly relied on the opinions of Drs. Bennett and Freudenberger in assessing Collins's mental capacities. On January 26, 2009, the district court granted the Commissioner's motion for summary judgment and affirmed the denial of benefits. Collins timely appealed.

## II.

We review the district court's grant of summary judgment *de novo*, and thus consider the Commissioner's denial of disability benefits directly. *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 31 (6th Cir. 2008) (citing *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1069 (6th Cir. 1992)). Judicial review of the Commissioner's decision "is limited to determining whether there is substantial evidence in the record to support the findings." *Wright v. Massanari*, 321 F.3d 611, 614

(6th Cir. 2003) (internal quotation marks and citation omitted).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).  We defer to the agency "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  This court does not "resolve conflicting evidence in the record or [] examine the credibility of the claimant's testimony."  *Wright*, 321 F.3d at 614.  "Th[e] [c]ourt must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted).

Collins argues that the Commissioner failed to meet his burden to show medical improvement because the ALJ improperly rejected the physical restrictions assessed by Dr. Echeverria.  Further, he asserts that the ALJ adopted mental capacity findings unsupported by substantial evidence because he rejected the findings of Dr. Belew without sufficient reasons and did not give full weight to the conclusions of Drs. Bennett and Freudenberger.  Finally, he contends that Dr. Miller's opinions were erroneous because the ALJ posed hypothetical questions to him that contained mental capacity findings unsupported by the record.

These arguments are unavailing for the reasons given by the district court in its thorough opinion and, upon *de novo* review of the administrative record, we affirm its decision in full. *Collins*, 2009 WL 211068, at *2–5.  For the first time on appeal, Collins maintains that the ALJ

should have incorporated Dr. Belew's assessments into the hypothetical questions addressed to Dr. Miller. As the district court noted, the ALJ rejected Dr. Belew's opinion yet Collins did not argue to the district court that the ALJ did so improperly. *Id.* at *5 n.6. It is well-settled that we "will not consider an error or issue which could have been raised below but was not." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) (citation omitted); *see also Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) (applying this rule in the Social Security disability benefits context). Thus, the possible import of Dr. Belew's opinions is not properly before us.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment.