NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0054n.06

No. 23-1460

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 02, 2024
KELLY L. STEPHENS, Clerk

KATHRYN A. LAPLANTE,

    Plaintiff-Appellant

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Kathryn LaPlante appeals the denial of her application for child disability benefits (CDB) and supplemental security income (SSI) under the Social Security Act. LaPlante argues that the administrative law judge (ALJ) erred in her analysis of LaPlante's pseudoseizures—non-epileptic seizures often caused by psychological trauma. The district court found no error in the ALJ's analysis. We AFFIRM in part and REVERSE in part.

**I.**

LaPlante first applied for CDB and SSI in November 2018, when she was nineteen years old, alleging disability based on numerous conditions. Following a hearing in June 2020, an ALJ determined that LaPlante had several severe impairments, including migraines, pseudoseizures, and other psychological disorders, but concluded that she was not disabled. This appeal focuses primarily on LaPlante's pseudoseizures, which are "attacks that resemble epilepsy-related seizures in symptoms and signs" but are not caused by "abnormal electrical activity" in the brain. *Cleveland Clinic*, *Psychogenic Nonepileptic Seizure (PNES)*, https://my.clevelandclinic.org

/health/diseases/24517-psychogenic-nonepileptic-seizure-pnes (last visited Dec. 29, 2023). Instead, pseudoseizures are "a physical reaction to underlying psychological distress" and are best treated by diagnosing and treating underlying psychiatric symptoms. *Id.*

**A.**

The medical records show that LaPlante has a history of mental disorders and struggles with anxiety and depression, among other issues. As early as 2017, LaPlante was experiencing episodes where "everything goes black for a second," and her doctor diagnosed her with "conversion disorder"—a general term for mental-health conditions that cause physical symptoms—and instructed her to "follow up with psychiatry." R.8-8, PageID 1339–40. In March 2019, LaPlante's family found her at home, unresponsive, and called EMS. After a short stay in the hospital, LaPlante reported feeling "weird" but presented as asymptomatic. *Id.* at PageID 1142. She was advised to follow up with her primary-care physician about the episode, which her medical records suggest was caused by conversion disorder. LaPlante's father told a doctor in April 2019 that, starting two to three months prior, LaPlante had been having these episodes two to three times per week, and during the episodes, she has "an extension of her neck and her eyes rolled backwards." *Id.* at PageID 1289. A few weeks later, LaPlante had a video EEG study that ruled out epileptic seizures. During the study, LaPlante had "multiple episodes" of "random movements of arms or legs, or jerking movements, flailing in the bed," but "none of these were associated with electrographic changes." *Id.* at PageID 1372.

LaPlante's primary-care doctor told LaPlante in May 2019 that she should not drive due to her pseudoseizures. A few weeks later, LaPlante underwent a diagnostic assessment with Dr. Gayle Oliver-Brannon, who administered a series of tests to assess her mental status. Dr. Oliver-Brannon concluded that "the pressure of employment would be a major factor in decompensation

on her part" and that LaPlante "does not present as a viable candidate for employment." R.8-8, PageID 1211. She noted, however, that "if employment is considered some restrictions may be needed." *Id.* On May 13, LaPlante's psychiatrist, Dr. Vishwas Mashalkar, wrote in his notes that LaPlante had been diagnosed with "non epileptic seizures" that were "psychogenic in nature" and thus "should not limit her ability to work." *Id.* at PageID 1392. Later that month, after reviewing LaPlante's medical file, a state psychological consultant concluded that LaPlante was "able to do simple work with sustainability and persistence." R.8-3, PageID 205.

Throughout 2019 and early 2020, LaPlante saw various doctors who noted that she continued to report migraines and pseudoseizures. She started treatment with a new psychiatrist, Dr. Kettie Joseph Daniels, who evaluated her mental capacity in April 2020. R.8-9, PageID 1804–10. Dr. Daniels assessed the degree to which LaPlante could exercise certain functions and concluded that for almost all categories, LaPlante would have either a "mild" restriction or her ability to function or would be "seriously limited but not precluded." Dr. Daniels identified one area of functioning in which LaPlante would be unable to "satisfactorily perform[] . . . independently, appropriately, effectively, and on a sustained basis in a regular work setting": the ability to complete a normal workday and workweek without psychologically based symptoms interrupting her and perform at a consistent pace. *Id.* at PageID 1804, 1808. She nonetheless concluded that LaPlante would be off task over 20% of the time and that she would be unable to work two to four days per month.

**B.**

Following a hearing on LaPlante's claims in June 2020, the ALJ conducted the five-step inquiry required by Social Security regulations, *see* 20 C.F.R. § 404.1520, and concluded that LaPlante was not disabled. At Step One, the ALJ found that LaPlante was not engaged in

substantial gainful activity. At Step Two, the ALJ assessed each of LaPlante's impairments and found that she had numerous severe impairments, including pseudoseizures and conversion disorder.[1] Step Three required the ALJ to consider whether LaPlante had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the appendix to 20 C.F.R. Part 404, Subpart P, appendix 1. The ALJ concluded that she did not, and that LaPlante had the residual functional capacity (RFC) to perform light work with restrictions. Relevant here, the ALJ concluded that due to her pseudoseizures and migraines, LaPlante's limitations included "no commercial driving, no exposure to extreme temperatures, no more than moderate noise level, and no work around unprotected heights, moving mechanical machinery, or around areas where [LaPlante] would be exposed to large bodies of open water, open flames, or sharp unprotected implements." R.8-2, PageID 62. The ALJ also included limitations related to LaPlante's mental capacity, noting, for example, that she can carry out "simple, routine tasks but not a production rate pace such as required working on an assembly line or conveyor belt." *Id.* at PageID 55.

Step Four assesses a claimant's past relevant work, of which LaPlante had none. Finally, at Step Five, the ALJ considered LaPlante's residual functional capacity and found that there are sufficient jobs in the national economy that she could perform, such as an office helper or mailroom clerk.

---

[1] The ALJ found that LaPlante had the following severe impairments: migraines/menstrual migraines; fibromyalgia; pseudoseizures; synovial plica syndrome of the bilateral knees; right hip impingement syndrome; interstitial cystitis, status-post cystoscopy; pelvic pain syndrome; and psychological conditions variously described as: attention deficit hyperactivity disorder, generalized anxiety disorder, bipolar disorder, binge-eating disorder, and conversion disorder. R.8-2, PageID 51.

The Social Security Administration (SSA) Appeals Council declined to review the ALJ's decision. LaPlante then filed this action against the Commissioner of Social Security. A magistrate judge issued a report and recommendation (R&R) that the district court affirm the ALJ's decision. LaPlante objected to the magistrate judge's report and recommendation, and the district court adopted the R&R and affirmed the ALJ's decision.

This appeal followed.

## II.

Our review of the ALJ's decision is "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## A.

LaPlante argues that the ALJ erred at Step Three by failing to address whether her pseudoseizures were medically equivalent to Listing 11.02, epilepsy. This alleged failure is significant because if the ALJ found that LaPlante's impairments met or were medically equivalent to one of the listings, LaPlante would be deemed disabled without moving on to the next steps. 20 C.F.R. § 404.1520(a)(4)(iii).

The Commissioner argues that LaPlante waived this argument by failing to include it in her objections to the magistrate judge's report and recommendation. But the argument lacks merit in any event.

An impairment is medically equivalent to a listed impairment in appendix 1 if "it is at least equal in severity and duration to" the impairment's criteria. 20 C.F.R. § 404.1526(a). The SSA "can find" equivalence in one of two ways. First, if a claimant has "an impairment that is described in appendix 1," the SSA will "find that [the] impairment is medically equivalent to that listing if

you have other findings related to your impairment that are at least of equal medical significance to the required criteria." *Id.* § 404.1526(b)(1). Second, if a claimant's impairment is not described in appendix 1, or if the claimant has "a combination of impairments, none of which meets a listing" in appendix 1, the SSA "will compare [the] findings with those for closely analogous listed impairments." *Id.* § 404.1526(b)(2)–(3).

LaPlante argues that the ALJ erred in failing to analyze whether her pseudoseizures were medically equivalent to Listing 11.02, epilepsy. The SSA first asks whether a claimant has "an impairment that is described in appendix 1." 20 C.F.R. § 404.1526(b)(1). Pseudoseizures are; they are described under Listing 12.07, somatic symptom and related disorders. *See* 20 C.F.R. pt. 404, app. 1, Listing 12.07. Thus, the SSA regulations ask whether, if Listing 12.07 is not technically met, the claimant's symptoms are nonetheless medically equivalent in severity and duration to each of Listing 12.07's criteria. LaPlante instead wants the ALJ to look to a different listing, Listing 11.02. But that listing is clear that the SSA "evaluate[s] psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00." 20 C.F.R. pt. 404, app. 1, 11.00H1. Thus—unlike disorders that are not listed—pseudoseizures are properly evaluated for medical equivalence under the listings corresponding to mental disorders. *Contra, e.g.*, *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *3 (6th Cir. May 26, 2023) (noting that primary headache disorders are not listed in appendix 1 and thus identifying "closely analogous listed impairment[s]").

LaPlante's argument that the ALJ was required to consider whether her pseudoseizures were equivalent to epileptic seizures contravenes the SSA's regulations. Accordingly, we conclude that the ALJ did not err in declining to consider LaPlante's pseudoseizures for medical equivalence to Listing 11.02.

**B.**

LaPlante also argues that the ALJ improperly evaluated and weighed the evidence of her pseudoseizures. We conclude that the ALJ erred by failing to articulate her reasons for the weight given to LaPlante's alleged symptoms, and remand to provide the ALJ an opportunity to explain her reasoning.

In assessing the severity of the pseudoseizures, the ALJ stated that LaPlante "reported seizures every other week, as well as migraine headaches," but concluded, in just one sentence, "that the evidence in the file is not consistent with disabling symptoms from these impairments." R.8-2, PageID 61. But "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Soc. Sec. Ruling 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017). The "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* The ALJ's brief discussion of LaPlante's pseudoseizures, which gave little weight to LaPlante's alleged symptoms without any clear explanation, fails to do so.

The Commissioner argues that substantial evidence nonetheless supports the ALJ's disability determination. But even if "substantial evidence otherwise supports the decision," remand is required because "the agency failed to follow its own procedural regulation." *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) ("Where, however, an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" (citation omitted)); *Hurst v. Sec'y of Health & Hum. Servs.*, 753

F.2d 517, 519 (6th Cir. 1985) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." (internal quotation marks and citation omitted)). So while the Commissioner may be correct that the ALJ's decision was supported by substantial evidence, we require the ALJ to state her reasoning with more detail to allow a reviewing court to make that determination.

## III.

In sum, the ALJ did not err in declining to evaluate LaPlante's pseudoseizures under the epilepsy listing. However, the ALJ failed to properly articulate her evaluation of LaPlante's alleged symptoms. We accordingly AFFIRM in part and REVERSE in part, and REMAND for further proceedings consistent with this opinion.